NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

AUG 11 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| U.S. SECURITIES & EXCHANGE COMMISSION, | No. 21-55437 |
| Plaintiff-Appellee, | D.C. No. 5:15-cv-02387-SVW-KK |
| v. | |
| ROBERT YANG; et al., | MEMORANDUM* |
| Defendants-Appellants, | |
| and | |
| CLAUDIA KANO; et al., | |
| Defendants, | |
| v. | |
| CELTIC BANK, | |
| Third-party-defendant, | |
| ——————————————— | |
| STEPHEN J. DONELL, | |
| Receiver. | |

Appeal from the United States District Court
for the Central District of California

———————————

\*     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Stephen V. Wilson, District Judge, Presiding

Argued and Submitted July 29, 2022
Pasadena, California

Before:  PAEZ and WATFORD, Circuit Judges, and BENNETT,[**] District Judge.

Defendant Robert Yang and relief defendants Yanrob's Medical, Inc. (Yanrob), HealthPro Capital Partners, LLC (HealthPro), and Suncor Care, Inc. (Suncor Care) appeal from the district court's judgment imposing disgorgement and civil penalties pursuant to consent agreements with each of the defendants. We affirm.

**1.**  The district court did not abuse its discretion in ordering disgorgement against relief defendant HealthPro.  HealthPro argues that the district court erred by holding that relief defendants are not permitted to deduct "legitimate expenses" under the Supreme Court's decision in *Liu v. SEC*, 140 S. Ct. 1936, 1950 (2020). But even assuming that *Liu* requires the deduction of legitimate expenses in this case, HealthPro's expenses do not qualify.

HealthPro used funds raised from investors in the Suncor Lynwood project to pay down a construction loan related to a different project, the Suncor Fontana facility.  This expenditure of investor funds on another project was prohibited by

[**]     The Honorable Richard D. Bennett, United States District Judge for the District of Maryland, sitting by designation.

the Suncor Lynwood offering documents and contravened the purpose for which the funds were invested. These expenses were therefore illegitimate under *Liu*. The fact that the other project was also engaged in the development of a nursing home facility does not change this result.

2. The district court did not abuse its discretion in holding Yang jointly and severally liable with Yanrob. Yang misappropriated investor funds and transferred them to Yanrob, an entity that he owned and controlled and through which he ran his personal medical practice. Yanrob had no connection to the Suncor projects, and Yanrob's various uses for these funds do not qualify as legitimate expenses. Thus, Yang is liable as a wrongdoing defendant for the entire amount of the misappropriated funds that he dissipated by transferring them to his medical practice. *See SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1098 (9th Cir. 2010). In this situation, there is no concern that the district court held Yang liable for profits "that have accrued to another," *Liu*, 140 S. Ct. at 1945, and the SEC was not required to show that Yanrob's expenditure of the misappropriated funds benefited Yang directly.

3. The district court did not abuse its discretion in holding Yang individually liable for disgorgement of $1,414,250. Yang contends that the district court's order violated the consent agreement, which requires that the allegations of the Amended Complaint be accepted as true for the purposes of determining

disgorgement. The Amended Complaint in turn alleges that Yang misappropriated "approximately $1.14 million" of Suncor Fontana funds to pay off loans from friends and family. But the consent agreement does not state that the parties agreed to limit Yang's disgorgement liability to $1.14 million. It instead provides that the district court "may determine the issues raised in the [disgorgement] motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence." The district court did not abuse its discretion in determining that the evidence presented supported a disgorgement amount of $1.4 million. Furthermore, judicial estoppel does not apply, as there is no indication that the district court was misled by the SEC's initial allegation that Yang misappropriated approximately $1.14 million of investor funds.

4. The district court did not abuse its discretion in imposing a $1,938,600 civil penalty equal to Yang's "gross amount of pecuniary gain." 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii). The court determined that it had the authority to impose the SEC's requested penalty of approximately $6 million but concluded that an amount equal to Yang's pecuniary gain was "appropriate." Yang contends that the SEC's requested amount was forbidden by the relevant statutes and that the district court would have imposed an even lower penalty if it had recognized that $1.9 million was the statutory maximum.

Even assuming that each of Yang's 39 victims did not count as a separate "violation" for purposes of calculating the maximum allowable penalty, this argument fails. The district court did not indicate that the three *Murphy* factors that favored Yang dictated a particular reduction from the SEC's proposed $6 million penalty. *See SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980). Instead, the court determined that a gross pecuniary gain penalty was appropriate in light of all the *Murphy* factors, the particular facts and circumstances of the case, and the need for deterrence. The court also noted that district courts frequently impose civil penalties equal to the amount of disgorgement. A penalty based on Yang's disgorgement liability was not an abuse of discretion even if it was the maximum amount permitted by statute, and even if three of the five *Murphy* factors indicated a lower "likelihood of future violations." *Id.*

Nor did the district court abuse its discretion in evaluating the *Murphy* factors. Yang correctly notes that the Amended Complaint does not specify that he was more than negligent in making false and misleading statements and omissions in the offering documents. Nonetheless, the district court properly found that Yang's specific actions—including falsifying escrow documents and making false statements to mislead investors even after he began misappropriating their funds—established "some degree of intentional or conscious misconduct." *SEC v. Rubera*, 350 F.3d 1084, 1094–95 (9th Cir. 2003) (internal quotations and citation omitted).

The district court also properly found recurrent conduct based on Yang's three separate securities offerings over the course of a year and a half, even though Yang had no prior securities law violations. *See Murphy*, 626 F.2d at 655.

**5.** The $1.9 million civil penalty imposed by the district court was not unconstitutionally excessive. The court's analysis of the *Murphy* factors indicates that a substantial penalty was necessary "to achieve the desired deterrence." *United States v. Mackby*, 261 F.3d 821, 830 (9th Cir. 2001). Yang's fraudulent scheme also caused substantial harm, with his investors losing more than $13 million. *See United States v. Bajakajian*, 524 U.S. 321, 339 (1998). In these circumstances, a $1.9 million penalty, equal to Yang's wrongful pecuniary gain, is not "grossly disproportional" to the gravity of his offense. *Id.* at 337.

**AFFIRMED.**